MAGNOLIA PETROLEUM COMPANY *v.* DUDNEY.

4-8144                                    200 S. W. 2d 793

Opinion delivered April 7, 1947.

*Arnold & Arnold, Armistead, Rector & Armistead, T. B. Vance* and *Philip G. Alston,* for appellant.

*Shaver, Stewart & Jones,* for appellee.

SMITH, J. W. C. Dudney filed a complaint containing the following allegations. Plaintiff is engaged in selling and distributing gasoline and oil products in the Texarkana, Arkansas, territory. The Magnolia Petroleum Company, a defendant, referred to throughout the record and in the briefs as Magnolia, which designation we adopt, is engaged in manufacturing, selling and distributing gasoline and oil products in the Texarkana and other areas. The city of Texarkana was the other defendant. The court at one time dismissed the case as to the city, but by appropriate pleadings and with the consent of the court, the city was again made a party defendant. Before submission one Howard E. Webb became a party on his own intervention, and he became a central figure in the lawsuit.

It was alleged and admitted that on August 25, 1936, the city which owned an airport known as the Texarkana Municipal Airport entered into a written lease contract with Howard E. Webb, leasing its buildings, hangar and equipment to Webb for a period of twenty years. This contract gave Webb the exclusive right to sell gasoline and motor oils at the airport. On May 26, 1938, Webb, with the consent of the city, assigned this contract to plaintiff Dudney. This assignment was executed as security for a debt due Dudney by Webb. This assignment contains the recital "that in further consideration of the financial assistance rendered to me by the said W. C. Dudney, he shall have the exclusive right to market and furnish to me gasoline, and other oil and gasoline products necessary for the operation of the Texarkana Municipal Airport for and during the period and life of said original lease contract, provided further that such gasoline and other materials or products shall be on a competitive basis."

To obtain a loan, which the city desired, it was necessary to cancel this lease and this was done with the consent of all parties concerned, and a second lease was given to Webb by the city similar to the first, but which required Webb to pay the city a certain per cent. of the

proceeds of the sale of all gasoline and oil sold at the airport.

This second lease was likewise assigned by Webb to Dudney by way of security for a debt due Dudney by Webb, and like the first assignment gave to Dudney "the exclusive right to market and furnish to me gasoline and other oil and gas products necessary for the operation of the Texarkana Municipal Airport, and necessary for the carrying out of my lease for and during the period and life of said original lease," with the same provision as to a competitive price basis.

Dudney owned no oil or gasoline and had no equipment for its distribution. He was the agent of the Gulf Refining Company, and as such negotiated sale contracts between Webb and the Gulf Company, whereby the Gulf Company undertook to furnish Webb oil and gasoline as required. Webb enlisted in the Army and during his absence his wife operated the airport under a power of attorney, which he gave her. She testified that the Gulf Company did not furnish the gasoline and oil as required and that she entered into a contract with Magnolia to do so, and this suit was brought to enjoin that operation, and from the decree awarding that relief is this appeal.

A great many interesting questions are discussed in the excellent briefs of opposing counsel, but we do not find it necessary to discuss all of them.

The suit while ostensibly one to enjoin the breach of a contract and to prevent interference with what Dudney calls his franchise, it is nevertheless in effect a suit for specific performance of a contract. This is true because if Webb cannot buy from Magnolia, he cannot buy from any other company, and must of necessity buy from Dudney as the agent of the Gulf Company if the airport is operated.

In the first place Dudney had no franchise from the city giving him exclusive right to sell oil and gasoline at the airport. Even if the city had the right to grant such a franchise it was not granted to Dudney. He had no contract whatever with the city, but insists that Webb

had a contract which was assigned to him by Webb, with the consent of the city, and that he thus acquired all the rights which Webb possessed.

Now the lease from the city to Webb "does hereby grant to the lessee the exclusive right to sell on said leased premises merchandise, including gasoline and oil, to furnish food, refreshments and lodging. . . ." It is upon the recital contained in the assignment of the lease that Dudney predicates his right to the relief prayed for and granted to him, but the record does not show that the consent of the city was given to these recitals. In fact, the contrary is shown. The record of the meeting of the city council shows that the city consented only to the assignment of the lease as security for a debt due Dudney and there is nothing in the record to indicate that the city was aware of or had consented to the recitals contained in the assignment of the lease giving Dudney the exclusive right to furnish oil and gasoline to Webb.

The case of *City of Paragould* v. *Arkansas Utilities Co.*, reported in 70 Fed. 2d 530, originated in this state and was decided by the Circuit Court of Appeals, Eighth Circuit. It was there held that only that which is granted in clear and explicit terms passes by a grant of property, franchises, or privileges in which government or public has an interest, and the record here does not support the finding that the city did anything more than consent to the assignment of the lease given as security for a debt which had been paid before the suit was filed. Petition for certiorari in the Paragould case was denied by the Supreme Court of the United States, 293 U. S. 586, 55 S. Ct. 101, 79 L. Ed. 682.

Mrs. Webb testified that she found it necessary to make a contract with Magnolia to secure the oil and gasoline required and we think the testimony shows that she was justified in doing so. She testified there were frequent delays in delivering the oil and gasoline required, varying from one to six hours, and that these delays in servicing the planes using the airport would be reported, that the airport serviced an average of fifty planes a day for the Ferry Command; that this delay caused a loss

of this business except in emergency cases, and that those delays continued during all the time she operated the air port, and she felt constrained to make the contract with Magnolia, the performance of which is enjoined by the decree from which is this appeal. She testified also that she had been charged in excess of the competitive prices for gasoline, but that this excess was refunded after making the contract with Magnolia.

If the agreement recited in the assignment constituted a contract, the specific performance of which would ordinarily be enforced, which we do not decide, the breach thereof by Dudney would defeat his right to ask its specific performance. Moreover, the contract lacks the mutuality which the law requires to justify a decree for specific performance. The recitals of the assignment obligate Webb to buy from Dudney, but do not require Dudney to sell. He had no oil or gasoline of his own for sale, and could only have furnished the oil and gasoline through the company for which he was an agent, and which was not a party to this suit. The assignment gave Dudney the right or option to furnish oil and gasoline but did not require him to do so. We held in the case of *Duclos* v. *Turner*, 204 Ark. 1000, 166 S. W. 2d 251, that a contract which leaves it entirely optional with one of the parties as to whether he will perform is not binding upon the other.

It is conceded that the debt due from Webb to Dudney which a chattel mortgage and the assignment of the lease were given to secure was paid in full before the institution of this suit, and there appears to have been no other valid consideration for the recital contained in the assignment. This and other reasons are argued for the reversal of the decree, but without passing upon them, we think the decree must be reversed for the reasons herein stated, and it is so ordered.

The decree is, therefore, reversed and the cause is dismissed.

Mr. Justice McFADDIN concurs.